IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **AVANTI BY AVANTI, LLC** | § | |
| | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION NO. 4:18-cv-00381-ALM |
| v. | § | |
| | § | |
| **AMY TEDDER** | § | |
| | § | |
| Defendant | § | |

**DEFENDANT'S REPLY IN SUPPORT OF RENEWED TCPA MOTION**

The Defendant, Amy Tedder, respectfully submits this Reply to Plaintiff's Response to her Renewed TCPA Motion:

1. **The Plaintiff Waived Any Issue of Whether the TCPA Applies by Failing to Raise and Develop any Specific Argument that the TCPA is "Procedural" and/or Conflicts with One or More Federal Rules of Civil Procedure.**

When a party simply refers to an issue in a perfunctory manner, but fails to develop a specific argument, the issue is waived. *See United States ex rel. Wuestenhoefer v. Jefferson*, 105 F. Supp. 3d 641, 672 (N.D. Miss. 2015). Courts in the Fifth Circuit have repeatedly made clear that when a party fails to make a specific argument in its briefing as to why the TCPA is "procedural" and/or conflicts with one or more specific federal rules of procedure, the argument is waived and the TCPA applies. *See NCDR, L.L.C. v. Mauze & Bagby*, *P.L.L.C.,* 745 F.3d 742, 753 (5th Cir. 2014) ("Because Kool Smiles waived its argument that the TCPA is a procedural law that conflicts with the Federal Rules of Civil Procedure, we proceed assuming that it does not."); *Haynes v. Crenshaw,* 166 F. Supp. 3d 773, 776 (E.D. Tex. 2016).

Here, the Plaintiff has simply alerted the Court that the Fifth Circuit has not specifically and conclusively addressed whether the TCPA applies in federal Court, without making any

argument that the TCPA does not apply or should not apply. Thus, the Plaintiff has waived any such argument.

### 2. Even if Not Waived, the TCPA Applies to Diversity Claims in Federal Court.

In *Henry v. Lake Charles Am. Press LLC*, the Fifth Circuit directly held that Louisiana's Anti-Slapp statute was "substantive," and therefore, "governs this diversity case." 566 F.3d 164, 168-169 (5th Cir. 2009). The Fifth Circuit has repeatedly affirmed this result with respect to Louisiana's Anti-Slapp statute. *Brown v. Wimberly*, 477 Fed. Appx. 214, 216 (5th Cir. May 18, 2012) ("This court has adopted the use of the statute in federal court under Erie."); *Mitchell v. Hood*, 614 Fed. Appx. 137, 139 (5th Cir. Jun. 4, 2015) ("Louisiana law governs the anti-SLAPP motion, even though it is 'nominally procedural.'").

Following *Henry,* district courts in this Circuit have repeatedly recognized that "anti-SLAPP statutes such as the TCPA are enforceable in federal courts sitting in diversity jurisdiction under the Erie doctrine." *Williams v. Cordillera Communs.,* 2014 U.S. Dist. LEXIS 79584, *6 (S.D. Tex. Jun 11, 2014); *see La'Tiejira v. Facebook,* 272 F. Supp. 3d 981, 985 (S.D. Tex. 2017); *Khalil v. Mem'l Hermann Health Sys.*, 2017 U.S. Dist. LEXIS 180694 (S.D. Tex. Oct. 30, 2017); *Banik v. Tamez*, 2017 U.S. Dist. LEXIS 51077 (S.D. Tex. Apr. 4, 2017); *Dr. C v. E. Houston Reg'l Med. Ctr.*, 2018 U.S. Dist. LEXIS 88472, *6-7 (Apr. 25, 2018). In *Williams,* the court reasoned that the holding of *Henry* and *Brown* apply equally to the TCPA because "there is no material difference between the Louisiana and Texas anti-SLAPP statutes." 2014 U.S. Dist. LEXIS 79584, *6. In *Khalil,* the court found "persuasive" the Fifth Circuit's "previous assumption that the [TCPA] applies in federal court and its application of the similar Louisiana anti-SLAPP statute." 2017 U.S. Dist. LEXIS 180694, *14. In *Banik,* the court determined that the TCPA applied in light of the Fifth Circuit's previous rulings on state anti-Slapp statutes and because the plaintiff could not identify "any contrary precedent in this Circuit." 2017 U.S. Dist. LEXIS 51077, *6.

Courts in the Eastern district have also recognized that "the TCPA is enforceable in a federal court sitting in diversity jurisdiction." *See Haynes v. Crenshaw*, 166 F. Supp. 3d 773, 776-777 (E.D. Tex. 2016); *Allen v. Heath*, 2016 U.S. Dist. LEXIS 193608, *9 (E.D. Tex. May 6, 2016); *Floyd v. Satu Tuulia Aalaei*, 2016 U.S. Dist. LEXIS 113930, *9 (E.D. Tex. Apr. 28, 2016); *Walker v. Beaumont Indep. Sch. Dist.,* 2016 U.S. Dist. LEXIS 101700, *6 (E.D. Tex. Feb. 10, 2016); *but see Thoroughbred Ventures, LLC v. Disman,* 2018 U.S. Dist. LEXIS 120272, *4-5 (July 19, 2018).

The approach of *Henry* and nearly all district courts in this Circuit applying *Henry* to the TCPA coalesces with the persuasive majority rule of other circuits. *See Godin v. Schencks*, 629 F.3d 79, 89 (1st Cir. 2010); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.,* 190 F.3d 963, 973 (9th Cir. 1999); *Adelson v. Harris*, 774 F.3d 803, 809 (2nd Cir. 2014); *but see Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 414 U.S. App. D.C. 465 (D.C. Cir. 2015).

3. **The Petition Clearly "Relates to" One or More Exercises of a Protected Right.**

   a. **Defendant's Pre-Suit Demand Letters were "Exercises of the Right to Petition" Under <u>At Least</u> Tex. Civ. Prac & Rem. Code Ann. § 27.001(4)(E).**

The Plaintiff concedes – as it must – that its pre-emptive declaratory lawsuit against Ms. Tedder was "based on, related to and in response to" her pre-suit demand letters, and only contests that such communications were exercises of the right to petition based on *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724 (Tex. App. Mar. 11, 2016).

The Defendant argued in its Renewed Motion to Dismiss that the pre-suit demand letters were "exercises of the right to petition" under subsections A, C, <u>and E</u> of the statutory definition. Dkt. 19 at p. 12-14. The *Levitano* case did not address whether pre-suit demand letters are "exercises of the right to petition" under Tex. Civ. Prac & Rem. Code Ann. § 27.001(4)(E).[1] Texas

---

[1] *See Long Canyon Phase II & III Homeowners Ass'n v. Cashion*, 517 S.W.3d 212, 219 & n. 23 (Tex. App. 2017) (recognizing that TCPA movant is confined on appeal to grounds and theories raised in its motion).

Courts have repeatedly distinguished *Levitano*, and held that pre-suit demand letters are "exercises of the right to petition" under sub-section (E) of the statutory definition.

In *Long Canyon Phase II v. Cashion*, the court followed *Levitano*'s analysis regarding sub-section (A) of the statutory definition, but "nevertheless" held that pre-suit demand letters "fall[] under subsection (E) of the TCPA's definition of the 'exercise of the right to petition,' which is 'any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.'" 517 S.W.3d 212, 220 (Tex. App. 2017). The court persuasively explained the reasoning for this holding as follows:

> Subsection (E) reflects legislative intent that the definition be consistent with and incorporate the nature and scope of the 'right to petition' that had been established in constitutional jurisprudence. The established understanding under First Amendment jurisprudence, both now and at the time of the TCPA's enactment, was that presuit demand letters generally fall within the 'right to petition,' although there is a federal circuit court case holding otherwise in the view that the petition right embraces only communications made to or toward government and not those between private parties. While the majority rule indeed appears to be founded on a policy-laden notion of courts providing 'breathing space' for the underlying right as opposed to specific support in constitutional text, we must presume that the Legislature intended this view of the protection's scope to control nonetheless. *Id.*

Texas courts have continued to distinguish *Levitano* as applicable to only sub-sections (A) and (C) of the statutory definition, and have followed the holding of *Cashion* with respect to subsection (E). For example, in *Moricz v. Long,* the court held as follows:

> While such pre-suit demand letters are communications under Section 27.001(1), they do not pertain to 'a judicial proceeding' so as to be an '[e]xercise of the right to petition" under Section 27.001(4)(A)(i) because there was no pending litigation at the time they were sent. See Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1), (4)(A)(i); *Levatino v. Apple Tree Café Touring, Inc.*, 486 S.W.3d 724, 728-29 (Tex. App.—Dallas 2016, pet. denied); *QTAT BPO Solutions v. Lee & Murphy Law Firm*, 524 S.W.3d 770, 2017 WL 924534, at *5-6 (Tex. App.—Houston [14th Dist.] 2017, pet. filed). <u>However, a pre-suit demand letter is an 'exercise of the right to petition' because it falls within the definition under subsection (E)</u>, which is 'any other communication that falls within the protection of the right to petition government under the Constitution of the United States or the constitution of this state.' Tex. Civ. Prac. & Rem. Code Ann. § 27.001(4)(E); *Long Canyon Phase II & III*

4

*Homeowners Ass'n, Inc. v. Cashion*, 517 S.W.3d 212, 220-21 (Tex. App.—Austin 2017, no pet.).

2017 Tex. App. LEXIS 6678, *9-11 (Tex. App. Jul. 20, 2017) (emphasis added) ("We agree with the well-reasoned analysis in Cashion and find that the demand letters were an exercise of Moricz's right to petition."); *see also Constr. Cost Data, LLC v. Gordian Grp., Inc.,* 2017 U.S. Dist. LEXIS 77481, *12 (S.D. Tex. 2017) (citing *Cashion* for the proposition that "pre-suit demand letters generally fall within the 'right to petition.'").

  **b. Defendant's August 2017 Emails were "Exercises of the Right to Free Speech" because they Involved a "Matter of Public Concern" Per Tex. Civ. Prac & Rem. Code Ann. § 27.001(7)(E).**

  The Plaintiff also concedes – as it again must – that its pre-emptive declaratory lawsuit against Ms. Tedder was "based on, related to and in response to" Mr. Tedder's August 7, 2017 email (which Plaintiff even attached as Exhibit 1 to its Petition). Plaintiff *only* contests whether this email involved "matters of public concern." Plaintiff's challenge to this point has no merit.

  "Exercise of the right of free speech" means "a communication made in connection with a matter of public concern." Tex. Civ. Prac. & Rem. Code § 27.001(3). "Matter of public concern" is defined to include any communication related to "a good, product, or service in the marketplace." Tex. Civ. Prac. & Rem. Code § 27.001(7)(E). Ms. Tedder's August 7, 2017 email relates to both a "good" and a "service" in the marketplace because the subject matter addresses the sale of the Diamond at issue in this case (a "good" or "product" in the marketplace), *as well as* the repair services performed by the Plaintiff for the Defendant (a "service" in the marketplace). Dkt. 2, p. 7. Plaintiff's attempt to argue that its lawsuit applies only to a 2014 "service" transaction, rather than a sale of a good (the Diamond) – even if credited – does not change whether the August 7, 2017 communication related to a "matter of public concern."

The Plaintiff also half-heatedly argues that Ms. Tedder's August 7 communication was somehow not an "exercise of free speech" because that speech was "motivated by a monetary interest." Although the TCPA has a "commercial speech exception," *see* Tex. Civ. Prac. & Rem. Code § 27.010(b), that exception is not applicable here. That exception only excludes from the scope of the act lawsuits *against a commercial seller* arising from speech *by the commercial seller to the customer*. That circumstances is not present here (indeed – this case is the inverse).

4. **The Plaintiff's Petition and Amended Petition are Cleary "Legal Actions."**

Tex. Prac. & Rem. Code § 27.001(6) defines "legal action" as "a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief." It is clear from this definition, and from Texas case applying it, that Plaintiff's Petition and its Amended Petition are "legal actions."

The Plaintiff's Petition and Amended Petition seek relief against the Defendant in the form of both legal declarations and money (attorneys' fees). Dkt. 2, p. 6; Dkt. 12, p. 6. Texas courts have repeatedly treated declaratory petitions as "legal actions" subject to the TCPA. *See Holcomb v. Waller Cty.*, 2018 Tex. App. LEXIS 1912, *11-12 (Tex.App. 2018) (holding that the TCPA applies where "[plaintiff] filed its declaratory-judgment action against [defendant] in response to his letter to the County complaining about its courthouse signage."); *Sierra Club v. Andrews Co.*, 418 S.W.3d 711, 713 (Tex. App. 2013).

In their Response, the Plaintiff erroneously suggests that *Craig v. Tejas Promotions, LLC* creates a judicial exception to the statutory definition of "legal action" that broadly excludes "declaratory actions." In *Craig*, the Court made a different and far narrower holding due to the unique procedural and factual circumstances of that case, which are not present here.

In *Craig*, a plaintiff filed suit for breach of contract and sought monetary, injunctive, and declaratory relief. 208 Tex. App. LEXIS 3126, *26. Importantly, the plaintiff did not seek

attorneys' fees in connection with the declaratory judgment act. *Id.* at *20. The defendant filed a TCPA motion that characterized the plaintiff's requests for declaratory relief as a "stand-alone legal action…subject to independent TCPA challenge." *Id.* at *27. However, the defendant "waived any TCPA challenge to the[] broader [breach of contract] claims by failing to raise it through a timely motion." *Id.* at *25. Due to those unique circumstances, the court held that the plaintiff's "declaratory claims" were "subsumed within" the plaintiff's breach of contract claim and as such, the defendant's TCPA motion did not "implicate any *independent* 'legal action.'" *Id.* at *28 (emphasis added). The court thereafter denied the TCPA motion because the defendant had "waived" the opportunity to challenge the breach of contract claim within which the requests for declaratory relief had been subsumed. *Id.*

The very unique circumstances of *Craig* are not present here because Defendant's TCPA Motion is directed toward the Plaintiff's entire Petition – not some component of it subsumed within a "broader" legal action. *Craig* is also materially dissimilar from the instant case because the Plaintiff is seeking a monetary award of attorneys' fees from the Defendant – not just declarations. The Plaintiff's pre-emptive declaratory lawsuit is exactly the type of SLAPP that the TCPA was enacted to ferret out: the Defendant raised a concern about Plaintiff's product/services, and Plaintiff responded by initiating frivolous pre-emptive litigation, including by seeking money.

**5. The Plaintiff Failed to Satisfy its TCPA Step II Burden.**

The Plaintiff has not met its Step II burden to present "clear" and "specific" evidence that:

1. A justiciable controversy exists with respect to each declaration sought;

2. The respective controversy will be resolved by the declaration sought;

3. It would be factually and/or legally appropriate to enter each declaration sought.

*See Holcomb*, 2018 Tex. App. LEXIS 1912 at *10-13.

A declaratory judgment action is only ripe for adjudication when "an actual controversy exists." *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 896 (5th Cir. 2000). An "actual controversy" requires "a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests." *Id.* A threat of litigation can only demonstrate the existence of a justiciable controversy when it is "specific and concrete." *Id.* at 897. The focus of this inquiry "must rest on the defendant's statements and conduct since an apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995). Only the actions of the declaratory defendant known to the declaratory plaintiff as of the commencement of the action are relevant to determination of whether threat exists. *UPS v. Pennie*, 2004 U.S. Dist. LEXIS 18071, *9 (N.D. Il. Sept. 1, 2004).

The Plaintiff has not plead or demonstrated "clear and specific" evidence of a justiciable controversy because there was no "specific and concrete" threat of litigation by the Defendant by or before December 13, 2017 against the Plaintiff regarding the subject matters for which Defendants requested declaratory judgment.

On August 7, 2017, Ms. Tedder reached out to Timothy Lee – the owner of all of the Avanti entities. Dkt. 2, p. 7. She complained that the Diamond Mr. Lee had sold her had been misrepresented, and about negligent repairs performed by "Avanti." *Id.* Ms. Tedder did not threaten litigation at that time – she concluded her email by stating "please let me know hot you plan [on] handling this matter." *Id.*

Ms. Tedder did not communicate or threaten any litigation until October 31, 2017, when her lawyer notified Mr. Lee and Mr. Chan by email that "Amy Tedder has retained me to pursue litigation <u>against By Avanti, LLC</u>, and you both, individually, arising from her 2012 purchase of

8

an 8.16 ct. princess cut diamond that was represented by you to be 'D' in color and 'SI2' in clarity, but was recently discovered to be of significantly and materially inferior quality (E/I2)." Dkt. 4-2, exhibit 1 thereto (emphasis added). The anticipated claims were clearly directed toward the misrepresentation of the diamond by its seller, and not the not negligent repairs that were performed thereafter. Dkt. 4-2, exhibits 1 and 3 thereto.

Mr. Chu responded by indicating that he was representing Avanti by Avanti and Tim Lee. Dkt. 4-2, exhibit 2 thereto. The parties' subsequent correspondence, from October 2017 through December 2017, demonstrates that Ms. Tedder's anticipated claims arose from the misrepresentation of the Diamond and were anticipated to be filed against Mr. Lee, Mr. Chan and Avanti. Dkt. 4-2, exhibits 3-5 thereto.

As of December 13, 2017, Ms. Tedder had only indicated that she intended to file suit against those involved with the sale of the Diamond for issues relating to the misrepresentation of the Diamond. Dkt. 4-2, exhibits 1, 3-5 thereto.

On December 13, 2017, the Plaintiff claims that it filed its Petition for Declaratory Judgment "because of Ms. Tedder's failure to accurately assess the nature of the business relationships involved and to determine the legal entities and issues involved." Dkt. 24-1, p. 3. In essence, the Plaintiff is claiming that it filed its pre-emptive declaratory lawsuit against the Defendant because the Plaintiff believed that the Defendant *might* – in a future lawsuit – name the incorrect corporate Avanti entity as the seller of the Diamond. *See id.*

Ironically, in the Plaintiff's pre-emptive declaratory lawsuit – which was ostensibly filed only to resolve whether Plaintiff was the entity involved in the 2012 sale of the Diamond to the Defendant – the Plaintiff expressly alleged that it sold the Defendant the Diamond:

    a. "Prior to this [2014] engagement, <u>Avanti had sold the ring to Ms. Tedder</u> and constructed at least two other settings at her direction."

    b. "Because <u>Avanti previously sold the same ring to Plaintiff in 2012</u> and had repaired other pieces of jewelry for the Defendant, Avanti attempted to repair the setting in a manner that would mitigate future wear and tear."[2] [3]

Prior to Plaintiff expressly asserting that it was the entity that sold the Defendant the Diamond in its Petition for Declaratory Judgment, nothing in the record demonstrates that the Defendant intended to sue the Plaintiff at all, much less for claims arising from negligent repairs alone.

The Plaintiff accuses the Defendant of "fail[ing] to accurately assess the involved parties and the facts supporting her allegations" and relies on this narrative to demonstrate the justiciability of its Petition for Declaratory Judgment, but it was the Defendant who prematurely filed litigation while the Plaintiff was still investigating, assessing, and preparing to commerce litigation against the appropriate parties. Although the Defendant ultimately counter-sued the Plaintiff for claims arising from the sale of the Diamond in 2012, this was only *after* the Plaintiff affirmatively and expressly plead that it was the entity that had sold the Plaintiff the Diamond.

---

[2] Plaintiff's Complaint specifically makes clear that references to "Avanti" refer to the Plaintiff. *See* Dkt. 1-1, p. 2 (COMES NOW, "Avanti by Avanti, LLC (hereinafter 'Avanti'), Plaintiff, and files this Original Petition…").
[3] Dkt. 1-1, p. 4, ¶¶6-7 (emphasis added).

>Respectfully submitted,
>
>*/s/ Mark Hammervold*
>Mark Hammervold
>State Bar No. #31147 (TN),
>#6320744 (IL), & #103719 (FL)
>mark@hammervoldlaw.com
>Hammervold PLC
>615 Deaderick St., Suite 1550
>Nashville, TN 37238
>Tel. 615.928.2466
>Fax 615.928.2264

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 17, 2018, a true and correct copy of the foregoing filing was served upon counsel of record for the Plaintiff, Avanti, William Chu (wmchulaw@aol.com), via the Court's ECF system, and by email.

>*/s/ Mark Hammervold*