# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| AVANTI BY AVANTI, LLC | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-00381 |
| | § | Judge Mazzant |
| AMY TEDDER, | § | |
| | § | |
| | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Avanti by Avanti, LLC's ("Avanti") First Motion to Remand (Dkt. #6). Having considered the relevant pleadings, the Court finds that Avanti's motion should be granted.

## BACKGROUND

This is a case about a diamond. In 2012, By Avanti ("Georgia Avanti")—a Georgia-based company—sold an eight-carat, princess-cut diamond ring ("the ring") to Defendant Amy Tedder ("Tedder")—Georgia Avanti's repeat-customer[1]. In 2014, Tedder asked Avanti—a Texas-based company—to repair a broken prong on the ring and Avanti did so (the "2014 Repair"). In 2017, the ring suffered further damage and Tedder contacted the ring's insurer—American International

---

[1] Due to Avanti's poor briefing, the Original Petition for Declaratory Judgment and Request for Disclosures (the "Original Petition") confuses Avanti with Georgia Avanti, treating the two as a single entity that sold the ring to Tedder *and* made the 2014 Repair. In truth, Timothy Lee ("Lee") filed the articles of organization for Georgia Avanti as a Georgia Limited Liability Company on April 19, 2011 (Dkt. #6, Exhibit 4 at pp. 2–3). Lee filed Avanti's certificate of formation as a Texas Limited Liability Company on June 23, 2014 (Dkt. #6, Exhibit 5 at pp. 2–3). In turn, Avanti could not have sold the ring to Tedder in 2012 as it would not exist for several years.
     Only through careful review of the parties' briefing and exhibits was the Court able to glean that Georgia Avanti sold the ring to Tedder (Dkt. #1, Exhibit 3 at pp. 1–2; Dkt. #5, Exhibit 5 at p. 1). While these confused corporate identities and the inadequate briefing that presented them were frustrating, they did not impact this order. The Court merely offers this explanation for the sake of clarity.
     Finally, on June 26, 2018, Tedder filed a Motion to Strike Avanti's claims that it did not sell the ring to Tedder and Georgia Avanti sold the ring to Tedder (Dkt. #10). On July 10, 2018, Avanti responded (Dkt. #17). As mentioned, Avanti's claim that it did not sell the ring to Tedder and, in fact, Georgia Avanti sold the ring to Tedder did not impact the Court's remand analysis.

Group ("AIG"). AIG's jewelry expert concluded that the damage to the ring had reduced its value from between $900 to $1,800 (Dkt. #1, Exhibit 4 at p. 6). After reviewing AIG's damage report on the ring, Tedder told Avanti's representative that the 2014 Repair had caused the damage to the ring's diamond in August 2017.

On December 13, 2017, Avanti filed its Original Petition in Texas state court, seeking declaratory relief from the court to determine whether the 2014 Repair caused the damage to the ring that Tedder discovered in 2017, whether the 2014 Repair reduced the ring's value, and whether the parties formed a contract with regard to the 2014 Repair (Dkt. #2 at p. 4). Along with this declaratory relief, Avanti sought its attorneys' fees (Dkt. #2 at p. 5). On May 24, 2018, Tedder removed the case to federal court on the basis of diversity jurisdiction (Dkt. #1). On June 20, 2018, Avanti filed its First Motion to Remand to State Court (Dkt. #6). On July 4, 2018, Tedder filed her response (Dkt. #15).

**LEGAL STANDARD**

Defendant seeks to retain this case in federal court. A defendant may remove any civil action from state court to a district court of the United States which has original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. Defendant has the burden of proving the jurisdictional amount when opposing a plaintiff's motion to remand. *De Aguilar v. Boeing Co.,* 47 F.3d 1404, 1408 (5th Cir. 1995). Any ambiguities are resolved against removal because the removal statute is strictly construed in favor of remand. *See Bosky v. Kroger Tex., LP.*, 288 F.3d 208, 211 (5th Cir. 2002). "[Plaintiff's] claim remains presumptively correct unless [Defendant] can show by a preponderance of the evidence that the amount in controversy is greater than the jurisdictional

amount." *De Aguilar*, 47 F.3d at 1412. "The preponderance burden forces [Defendant] to do more than point to a state law that *might* allow [Plaintiff] to recover more than what is pled." *Id*. "[Defendant] must produce evidence that establishes that the actual amount in controversy exceeds [$75,000]." *Id*. "[I]f [Defendant] can show that the amount in controversy actually exceeds the jurisdictional amount, [Plaintiff] must be able to show that, as a matter of law, it is certain that [it] will not be able to recover more than the damages for which [it] has prayed in the state court complaint." *Id.* An "absolute certainty in valuation of the right involved is not required, and a reasonable probability of an amount suffices if the amount can be ascertained pursuant to some realistic formula." *Dreyer v. Jalet*, 349 F. Supp. 452, 465 (S.D. Tex. 1972).

## ANALYSIS

Avanti argues that this case's amount in controversy does not exceed $75,000, precluding diversity jurisdiction. Tedder counters that her counter/cross claim (the "counterclaim") (Dkt. #5), concerning Avanti's misrepresentation of the ring's value vaults the amount in controversy above the jurisdictional threshold. To that end, Tedder contends that her counterclaim, whose amount in controversy concerns Avanti's misrepresenting the ring's value by around $148,000[2], "converges" with Avanti's desired declaratory relief such that the two are identical and bear the same amount in controversy (Dkt. #15 at p. 5). In support of this argument, Tedder avers that she sought the

---

[2] In her counterclaim, Tedder claims that Avanti misrepresented the clarity and color of the ring's diamond to give the ring a market value of $185,000 (Dkt. #5 at pp. 9–10). Tedder further alleges that the true clarity and color of the ring's diamond were substantially inferior to those represented and the ring's real value was "one fifth" of that sum or about $37,000 (Dkt. #5 at pp. 9–10). In turn, the primary amount in controversy for the causes of action in Tedder's counterclaim is the difference between the ring's value as Avanti claimed and its actual market value according to Tedder. Tedder confirms this evaluation of the amount in controversy in her counterclaim and response (Dkt. #5 at p. 13; Dkt. #15 at p. 3). As previously explained, however, Tedder did not and, indeed, could have bought the ring from Avanti but instead purchased it from Georgia Avanti. *Supra* note 1. Accordingly, the parties in the counterclaim do not match the facts of the case, i.e. Georgia Avanti sold Tedder the ring and is the proper target for her counterclaim. The Court only explains these facts concerning the sale for the sake of clarity, as these confused corporate identities did not affect the remand analysis.

3

2014 Repair not as an isolated service from Avanti but pursuant to a "warranty obligation in connection with the 2012 sale" of the ring (Dkt. #15 at p. 8).

When, as here, a complaint seeks unspecified damages[3], a defendant may prove that the amount in controversy meets the jurisdictional requirement "(1) by demonstrating that it is 'facially apparent' that the claims are likely above $75,000, or (2) 'by setting forth the *facts* in controversy—preferably in the removal petition, but sometimes by affidavit—that support a finding of the requisite amount.'" *Luckett v. Delta Airlines, Inc.*, 171 F.3d 295, 298 (5th Cir. 1999) (quoting *Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995) (emphasis in original); *St. Paul Reinsurance Co. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998). "[T]he jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Allen*, 63 F.3d at 1335. A court may not consider a counterclaim that a party files after the complaint on which removal is based to satisfy the amount in controversy requirement. *St. Paul*, 134 F.3d at 1254.

"If a state statute[4] provides for attorney's fees, such fees are included as part of the amount in controversy." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). "The amount in controversy, in an action for declaratory or injunctive relief, is the value of the right to be protected or the extent of the injury to be prevented." *St. Paul*, 134 F.3d at 1252–53.

Tedder offered no evidence to support a calculation of Avanti's attorneys' fees, foreclosing this often substantial contributor to a case's amount in controversy. The Court rejects Tedder's interpretation of Avanti's Original Petition as encompassing the alleged violations of the North Carolina Unfair and Deceptive Trade Practices Act; fraud; breach of express warranty;

---

[3] Avanti does not articulate its damages in the Original Petition (Dkt. #2). Accordingly, Avanti did not seek specific, numerical damages. *See Luckett*, 171 F.3d at 298.
[4] Avanti seeks attorneys' fees under Chapter 37.009 of the Texas Civil Practice and Remedies Code (Dkt. #2 at p. 5).

breach of implied warranty of merchantability/fitness for specific purpose; and professional negligence in Tedder's counterclaim (Dkt. #5). The Court also discards Tedder's vague but adamant claim that because Tedder asserts that the 2014 Repair arose from a warranty obligation, Avanti's desired declaratory relief is "inextricably intertwined" with whether the company "is responsible for the sale of [the ring]" in 2012 (Dkt. #15 at p. 8).

The Original Petition sought "a declaration that the parties in fact formed a valid binding contract under Texas law *related to the repair work that* [Tedder] *described in her emails*." (Dkt. #2 at p. 2) (emphasis added). A common-sense[5] reading of such language rebukes Tedder's claim that "the substance of the Defendant's counterclaim converges with the declaration of non-liability sought by the Plaintiff in its Petition for Declaratory Judgment." (Dkt. #15 at p. 5). After all, the Original Petition explicitly limits Avanti's desired declaratory relief within the confines of the "repair work" involving the ring (Dkt. #2 at p. 2). As already discussed, the Court cannot consider Tedder's counterclaim in its own right for purposes of its amount in controversy analysis. *Caterpillar v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 2429 (1987)) ("Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant."); *Luckett*, 171 F.3d at 298; *St. Paul*, 134 F.3d at 1254; *Parmer v. Travelers Indem. Co.*, No. 6:11CV311, 2011 WL 13220760, at *1 (E.D. Tex. Sept. 9, 2011) (citing *Doddy v. Oxy USA, Inc.*, 101 F.3d 448, 456 (5th Cir. 1996)) ("Jurisdiction is determined at the time suit is filed.").

---

[5] *See Wilson v. Hibu Inc.*, No. 3:13-cv-2012-L, 2013 WL 5803816, at *3 (N.D. Tex. Oct. 28 2013) (citing *Allen*, 63 F.3d at 1336) (explaining that a court can use its common sense in evaluating a plaintiff's claims and the nature of the dispute to determine whether a case exceeds the amount in controversy).

The Original Petition seeks declaratory judgments on Avanti's culpability and liability, if any, as a result of the 2014 Repair[6]. For purposes of the amount in controversy analysis, the value of a declaration concerning Avanti's culpability due to the repair is between $900 and $1,800—the diminished value of the ring due to the allegedly flawed repair (Dkt. #1, Exhibit 4 at p. 6). *See St. Paul*, 134 F.3d at 1252–53. Meanwhile, the liability associated with Avanti's desired declaration that a binding contract exists concerning the 2014 Repair also appears to be between $900 and $1,800—Tedder's expectation damages. *Id.*; *Hoffman v. L & M Arts*, 838 F.3d 568, 584 (5th Cir. 2016) (citing *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 454 (5th Cir. 2001) ("Typical contract damages calculate the benefit of the bargain by subtracting the value of the performance actually received by the non-breaching party from the value of the performance contracted for."). Accordingly, the Court finds that Tedder has failed to prove by a preponderance of evidence that the amount in controversy exceeds the jurisdictional threshold. Thus, remand is proper.

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Motion to Remand (Dkt. #6) is hereby **GRANTED** and the case is remanded to the 68th Civil District Court of Dallas County, Texas[7].

---

[6] Even if the Court found Avanti's desired declaratory relief ambiguous, which it does not, it would still have to construe it in favor of remand. *Bosky*, 288 F.3d at 211.

[7] Since this case originated in Dallas County, Tedder also improperly removed it to the Eastern District of Texas rather than to the Northern District of Texas. *See* 28 U.S.C. § 1441(a) (explaining that a case "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."). Improper removal can subject a party to sanctions, including liability for attorneys' fees and costs associated with the removal. *News-Texan, Inc. v. City of Garland*, 814 F.2d 216, 220 n.10 (5th Cir. 1987); *Muirhead v. Bonar*, 556 F.2d 735 (5th Cir. 1977). Given Tedder's subpar briefing, the Court ascribes her improper removal to carelessness and will not consider such measures this time. The Court, however, takes this opportunity to warn Tedder, her counsel, and others to ensure that their removals are proper, particularly in such simple ways as involving the right federal district court.

6

**SIGNED this 23rd day of August, 2018.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE